UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

HOWARD FILE,

                    Appellant,

        v.

SYED RASHID and ZAREENA RASHID,

                    Appellees.

------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-2481 (RPK)

RACHEL P. KOVNER, United States District Judge:

The United States Bankruptcy Court for the Eastern District of New York held attorney Howard File in civil contempt for violating the bankruptcy court's discharge injunction by continuing to prosecute a fraudulent conveyance action against the debtors in state court. File appeals, principally arguing that contempt sanctions were unjustified because he had an objectively reasonable basis for believing that his state court action might not be barred by the discharge injunction. File also challenges the amount of compensatory sanctions awarded, the award of punitive sanctions, and the bankruptcy court's decision to hold File personally liable. For the following reasons, the bankruptcy court's judgment is affirmed.

## BACKGROUND

In 2014, Barry Crupi brought an action in New York state court against appellees Syed Rashid and Zareena Rashid for judgment on a promissory note. *See* Affirmation of David J. Doyaga in Partial Opp'n to Debtors' Mot. to Reopen Chapter 7 Case and for Sanctions ("Doyaga Affirm.") ¶¶ 6–17 (Bankr. Dkt. #32). Appellant Howard File represented Crupi in that lawsuit. Before that case reached trial, the Rashids transferred title to three properties, including the

1

commercial property that secured the note, to their son, Mustafa Rashid, in exchange for no consideration. *Id.* ¶¶ 18–27. In 2019, the state court granted judgment in favor of Crupi for the sum of $995,791. *Id.* ¶ 24. To enforce the judgment, Crupi (again represented by File) began a separate fraudulent conveyance action in state court against Syed, Zareena, and Mustafa, seeking to set aside the title transfers as fraudulent conveyances under New York law. *Id.* ¶ 28; Mot. to Reopen Case and Impose Sanctions ("Mot. to Reopen") ¶ 4 (Bankr. Dkt. #30). That action also sought monetary damages and attorney's fees. Doyaga Affirm. ¶¶ 28, 32.

In June 2019, the state court granted partial summary judgment in the fraudulent conveyance action to Crupi, ordering Mustafa Rashid to transfer title to the properties back to his parents. *Id.* ¶ 28; June 10, 2019 State Court Order (Bankr. Dkt. #32-1). The court deferred the issue of damages and attorney's fees for trial. *Ibid.* Crupi then sought to enforce his judgment liens by scheduling a sale of the two investment properties owned by the Rashids. Affirmation in Supp. of an Order Granting Relief from the Automatic Stay ("Mot. for Relief from Stay") ¶ 3 (Bankr. Dkt. #21).

In December 2020, Syed and Zareena Rashid filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of New York. *See* Chapter 7 Pet. (Bankr. Dkt. #1). The petition listed Crupi as a creditor in its schedules and listed File, in his capacity as Crupi's attorney, as an additional party to be noticed. *See id.*, Schedule D. The bankruptcy court mailed the notices of the filing of the petition and the meeting of creditors to Crupi and File. *See* Certificates of Mailing (Bankr. Dkts. #7, 8).

In February 2021, Crupi, represented by David Doyaga, filed a motion for relief from the automatic stay imposed on the filing of the petition so that Crupi could proceed with the sale of the Rashids' properties to enforce his judgment lien. *See* Mot. for Relief from Stay. The

bankruptcy court granted that motion, allowing the sale of the investment properties to proceed. *See* Order Granting Relief from the Automatic Stay (Bankr. Dkt. #26). Crupi did not file other objections to the discharge or requests for determinations of dischargeability, including with respect to the still-pending fraudulent conveyance action.

On May 18, 2021, the bankruptcy court granted the Rashids a discharge under 11 U.S.C. § 727, and mailed notice of the discharge to the Rashids' creditors, including Crupi and File. *See* Order of Discharge (Bankr. Dkt. #28); Notice Recipients of Order of Discharge (Bankr. Dkt. #28-1). The notice states that Syed Rashid and Zareena Rashid are granted a discharge under 11 U.S.C. § 727. The second page, entitled "Explanation of Bankruptcy Discharge in a Chapter 7 Case," states that "[t]he discharge prohibits any attempt to collect from the debtor(s) a debt that has been discharged," including by "continu[ing] a lawsuit." Notice Recipients of Order of Discharge 2 (capitalization altered). It adds that "most, if not all, types of debt are discharged if the debt existed on the date the bankruptcy case was filed," before listing certain debts that are exempted, such as tax and student loan debt. *Ibid.* It adds that "[a] creditor who violates this order can be required to pay damages and attorney's fees to the debtor(s)." *Ibid.* Finally, it states that the explanation "is only a general summary of the bankruptcy discharge," and that "[b]ecause the law is complicated, you may want to consult an attorney to determine the exact effect of the discharge in this case." *Ibid.*

On July 28, 2021, the state court in the fraudulent conveyance action held a hearing. The Rashids, appearing *pro se*, raised the discharge injunction as a defense to the remaining damages claims in that suit. File, representing Crupi, opposed, arguing that the damages claims in the fraudulent conveyance suit survived the discharge because they were not "ripe." Debtors' Aff. in Supp. of Mot. for Damages for Emotional Distress ¶¶ 9–10, 21 (Bankr. Dkt. #55). The Rashids

then filed a *pro se* motion to dismiss based on the discharge and File opposing.  Mot. to Reopen ¶ 9.  Meanwhile, Robert Nadel, Syed and Zareena's attorney in their Chapter 7 bankruptcy proceeding, emailed File multiple times advising him that the fraudulent conveyance action should be discontinued.  *Id.* ¶¶ 11–12, 15–16.  File did not discontinue the actions.

At a state court hearing on December 14, File argued, over the *pro se* objections of the Rashids, that the fraudulent conveyance action had not been discharged because any damages had yet to be determined.  The court denied the Rashids' motion to dismiss.  *See* Dec. 14, 2021 State Court Hr'g Tr. (Bankr. Dkt. #30-7).

In February 2022, after further attempts to get File to discontinue the suit proved fruitless, Nadel entered an appearance in the state court action on behalf of the Rashids.  At a hearing on February 25, Nadel argued to the court that the discharge injunction plainly barred the suit, notwithstanding File's argument that the damages were not "ripe."  Feb. 25, 2022 State Court Hr'g Tr. (Bankr. Dkt. #30-10).  File continued to oppose dismissal.  The state court indicated that it would be open to revisiting its earlier denial of the Rashids' motion to dismiss, and advised the parties to return to the bankruptcy court and "seek the guidance of the Bankruptcy Court . . . . on whether or not the Bankruptcy Court views the claims in this particular summons and complaint as covered by the discharge."  *Id.* at 5.

On April 13, 2022, the Rashids, represented by Nadel, moved in bankruptcy court to reopen their Chapter 7 case and to sanction Crupi and File for violating the discharge injunction.  Mot. to Reopen.  Crupi and File, represented by Doyaga, opposed the bid for sanctions but conceded that File had been mistaken as to whether the fraudulent conveyance action could proceed notwithstanding the discharge.  *See* Doyaga Affirm. ¶¶ 2–5.  The bankruptcy court indicated at a hearing on May 19 that the damages sought by File and Crupi had been discharged and issued an

4

order to that effect on May 27.  *See* May 19, 2022 Bankr. Ct. Tr. (Bankr. Dkt. #65); Order Reopening Chapter 7 Case (Bankr. Dkt. #36).  Immediately after that order issued, File withdrew the fraudulent conveyance action as to the Rashids with prejudice.  *See* Order Dismissing Action (Bankr. Dkt. #39-2).  File also sent the state court a letter indicating that Nadel had "violated your Honor's directive from the Bench not to seek sanctions" in the bankruptcy case.  May 27, 2022 Ltr. (Bankr. Dkt. #38-1).

Between May 2022 and April 2023, the bankruptcy court invited multiple rounds of briefing as well as oral argument on the Rashids' motion for sanctions, but did not hold an evidentiary hearing, despite File's requests for one.  *See* Affirmation of Howard M. File ("File Affirm.") ¶ 10 (Bankr. Dkt. #56-1) (requesting an evidentiary hearing).

On September 27, 2023, the bankruptcy court ruled on the sanctions motion.  *See* Oral Decision Tr. (Bankr. Dkt. #83).  Applying *Taggart v. Lorenzen*, 587 U.S. 554 (2019), the court held Crupi and File in contempt, determining that sanctions were appropriate because no "fair ground of doubt" existed as to whether File's continued prosecution of the fraudulent conveyance suit violated the discharge injunction.  *See id.* at 9:1–28:22.  The court accepted for purposes of argument that File believed the debts at issue had not been discharged, but reasoned that ignorance of the bankruptcy law was not a defense.  *Id.* at 21:13–13.  It then determined that compensatory sanctions were warranted as an exercise of the court's "broad discretion" based on "the nature of the harm and the probable effect of alternative sanctions."  *Id.* at 29:5–14.  While it noted that some courts awarded legal costs only for "willful, bad faith or repressive conduct," it found that standard required only that a creditor have "go[ne] forward with collection activity, knowing or having reason to know that the debt was in bankruptcy and had received a discharge," *id.* at 30:12–20—a standard the court found satisfied.  The court then determined that File's conduct constituted

"particularly egregious creditor misconduct . . . taken in clear disregard of the discharge," warranting punitive damages. *See id.* at 31:14–33:15.

The court ultimately held Crupi and File jointly and severally liable to the Rashids for (1) compensatory legal fees in the amount of $58,902.35 in attorney's fees and $667.35 in costs, (2) emotional distress damages in the amount of $5,000, and (3) punitive damages in the amount of $6,000. *See* Order Granting Balance of Debtors' Mot. Seeking Sanctions (Bankr. Dkt. #90); Judgment (Bankr. Dkt. #113).

File, proceeding *pro se*, now appeals the bankruptcy court's contempt sanction.

## STANDARD OF REVIEW

"A bankruptcy court's decision on sanctions is reviewed for abuse of discretion." *L. Offs. of Francis J. O'Reilly v. Selene Fin., L.P.* (*In re DiBattista*), 33 F.4th 698, 702 (2d Cir. 2022) (citing *Solow v. Kalikow* (*In re Kalikow*), 602 F.3d 82, 91 (2d Cir. 2010)). "A bankruptcy court 'necessarily abuses its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *PHH Mortg. Corp. v. Sensenich* (*In re Gravel*), 6 F.4th 503, 511 (2d Cir. 2021) (quoting *Kalikow*, 602 F.3d at 91).

A bankruptcy court's decision to forgo an evidentiary hearing is reviewed for abuse of discretion. *Gordon v. Tese-Milner* (*In re Gordon*), 577 B.R. 38, 49 (S.D.N.Y. 2017).

## DISCUSSION

On appeal, File argues that the bankruptcy court should not have imposed sanctions because File had an objectively reasonable basis for his belief that the filing injunction did not bar his state-court fraudulent conveyance action, that the amount of sanctions imposed was excessive, that the bankruptcy court should have held an evidentiary hearing before imposing sanctions, and

that he should not be held personally liable for the sanctions.  The bankruptcy court's judgment is affirmed.

## I.    Civil Contempt

File argues that the bankruptcy court erred by holding him in civil contempt for violating the court's discharge injunction.  The bankruptcy court's finding of civil contempt is affirmed.

### A.    Legal Standards

At the conclusion of a Chapter 7 bankruptcy proceeding, a bankruptcy court typically enters an order under Section 727(b) "discharg[ing] the debtor from all debts that arose before the date of the order for relief."  11 U.S.C. § 727(b); *see Taggart*, 587 U.S. at 557–58.  Section 524(a)(2) provides that the "discharge order 'operates as an injunction' that bars creditors from collecting any debt that has been discharged."  *Taggart*, 587 U.S. at 558 (quoting 11 U.S.C. § 524(a)(2)).  Several categories of pre-petition debts are exempt from this discharge.  *See* 11 U.S.C. § 523(a)(1)–(19); *Taggart*, 587 U.S. at 558.  Exemptions for pre-petition debts arising from fraud, false pretenses, or willful injury—set out at Sections 523(a)(2), (a)(4), and (a)(6)—must be invoked by the creditor via a dischargeability determination proceeding filed within the sixty-day period established by Federal Rule of Bankruptcy Procedure 4007(c).  *See* 11 U.S.C. § 523(c)(1); Fed. R. Bankr. P. 4007(c).  If the creditor does not file a dischargeability complaint within the prescribed time, the debts will be discharged.  *See* 11 U.S.C. § 523(c)(1).

The timeline changes somewhat if such a debt is not properly listed on a debtor's bankruptcy petition schedules.  *See id.* § 523(a)(3).  If it is not properly listed, a debt arising from fraud, false pretenses, or willful injury is not discharged until the creditor has an opportunity to seek a dischargeability determination, unless the creditor had "notice or actual knowledge" of the bankruptcy petition.  *See id.* § 523(a)(3)(B).

7

Section 105(a), which authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out" other bankruptcy provisions, 11 U.S.C. § 105(a), empowers bankruptcy courts to hold creditors who violate Section 524(a)(2)'s injunction in civil contempt, *Taggart*, 587 U.S. at 560. In *Taggart*, the Supreme Court clarified the standard that applies when determining whether a party may be held in civil contempt for a violation of the discharge injunction. "The Court determined that a bankruptcy court may hold a party in civil contempt for violating the discharge injunction 'if there is *no fair ground of doubt* as to whether the order barred the [party's] conduct.'" *In re Windstream Holdings, Inc.*, 105 F.4th 488, 495 (2d Cir. 2024) (quoting *Taggart*, 587 U.S. at 557) (alteration in *Windstream Holdings*). "The *Taggart* standard of 'no fair ground of doubt' is satisfied 'when there is no objectively reasonable basis for concluding that the [party's] conduct might be lawful under the discharge order.'" *Ibid.* (quoting *Taggart*, 587 U.S. at 560) (alteration in *Windstream Holdings*). The standard is "generally an *objective* one," and "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Taggart*, 587 U.S. at 561. However, "subjective intent is [not] always irrelevant": "civil contempt sanctions may be warranted when a party acts in bad faith," and "a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Id.* at 561–62.

**B.    Application**

File appeals the bankruptcy court's ruling that he lacked an objectively reasonable basis to believe the damage he sought to recover from the fraudulent conveyance action might not have been discharged. A discharge order under Chapter 7 "discharges the debtor from all debts that arose before the date of the order for relief under this chapter," subject to enumerated exceptions. 11 U.S.C. § 727(b). In continuing to pursue damages from the Rashids in the state fraudulent

conveyance action despite their Chapter 7 discharge, File argued to the state court that he could still seek those damages because they were not "ripe[]" when the discharge issued due to the fact that there was no award fixing their amount. Dec. 14, 2021 State Court Hr'g Tr. 4:15–25. But the bankruptcy code defines a "debt" as any "liability on a claim," 11 U.S.C. § 101(12), and defines "claim" as a "right to payment, *whether or not such right is reduced to judgment*, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," 11 U.S.C. § 101(5)(A) (emphasis added). File does not defend on appeal the ripeness argument he presented to the state court. Instead, he points to three events that he says created a fair ground for doubt as to discharge: (1) the debtors allegedly failed to list the fraudulent conveyance suit in their bankruptcy schedules; (2) debtors and their attorney failed to adequately explain to File why the debt had been discharged; and (3) the state court initially decided to deny debtors' motion to dismiss the fraudulent conveyance action on the basis of the discharge injunction. *See* Appellant's Br. 14–19 (Dkt. #7). The bankruptcy court did not abuse its discretion by finding that none of these justified File's violation of the discharge injunction.

*First*, whether the Rashids properly listed the fraudulent conveyance suit on their Chapter 7 petition is immaterial. The petition lists Crupi to be notified as a creditor by way of File, his attorney. *See* Chapter 7 Pet., Schedule D. Crupi and File were mailed notices of the petition by the bankruptcy court. *See* Certificates of Mailing. The bankruptcy court therefore found that File received timely notice of the petition, *see* Oral Decision Tr. 28:12–19, a factual finding that File does not dispute on appeal. As explained, Section 523(a)(3)(B) exempts an unscheduled, pre-petition debt arising from fraud from discharge, but only if the creditor did not have "notice or actual knowledge of the case in time" to file an action for a discharge determination under Section 523(c)(1). 11 U.S.C. § 523(a)(3)(B); *see Massa v. Addona* (*In re Massa*), 187 F.3d 292, 296, 298

9

(2d Cir. 1999) (noting that, in a Chapter 7 bankruptcy proceeding, "[s]cheduling is irrelevant if [the creditors] possessed adequate knowledge" of the bankruptcy). Because it is undisputed that File received timely notice of the petition, even if the fraudulent conveyance suit were improperly scheduled, there would still be no fair ground for doubt as to whether the debt was discharged.

*Second*, File may not hide behind the debtors' and their attorney's purported failure to adequately explain why the discharge covered the fraudulent conveyance suit. File was not misled by debtors or their attorney, who repeatedly communicated to File that the debt had been discharged. *See* Oral Decision Tr. 33:16–35:6. File points to no authority for the proposition that liability for civil contempt hinges on an obligation by the opposing party to affirmatively correct the contemnor's mistaken understanding of the requirements of the court's order. As the Supreme Court explained in *Taggart*, the standard of civil contempt is objective: File's subjective belief that he was complying with the discharge injunction provides no defense "if that belief was objectively unreasonable." 587 U.S. at 561.

*Third*, on the record here, the state court's initial decision to deny the debtors' motion to dismiss did not shield File. File argues that the state court's "initial[] determin[ation] that the discharge did not apply to the Fraudulent Conveyance suit" because it was not yet "ripe" created a fair ground for doubt as to whether the discharge injunction applied to that suit. Appellant's Br. 16. A litigant's citation of "authority that supports his position" can provide evidence that the litigant's position was not objectively unreasonable. *In re Shuey*, 606 B.R. 760, 771 (Bankr. N.D. Ill. 2019) (creditor's violation of discharge injunction was not sanctionable in part because "the theories [creditor] set forth in the state court collection actions were perhaps reasonable given that several courts had held that the claims in the nature of [c]reditor's were excepted from discharge"); *see In re Sherman*, No. 21-CV-20542, 2023 WL 4280098, at *4 (Bankr. E.D. Ky. May 24, 2023)

10

("Courts have held a fair ground of doubt exists when there is a clear split of authority."); *In re Orlandi*, 612 B.R. 372, 380, 382 (B.A.P. 6th Cir. 2020) (dueling bankruptcy court cases over whether "pre-petition guaranty is a contingent claim that is discharged in bankruptcy" provided reasonable basis for creditors to pursue the claim post-discharge); *cf. Pearson v. Callahan*, 555 U.S. 223, 243–44 (2009) (officers entitled to qualified immunity when they acted in accordance with the law established by multiple courts of appeals and state Supreme Courts). But File cites no authority predating his attempt to collect discharged debt by opposing the Rashids' motion to dismiss the fraudulent-conveyance suit. He therefore cannot claim that he was "entitled to rely on the[] cases" in taking that step. *Pearson*, 555 U.S. at 822. In any event, the leading cases do not treat a single oral ruling from a trial court as establishing the objective reasonableness of a litigant's position. *Shuey*, for instance, relies on the opinion of "several courts," the preliminary decisions in the case at hand, and the court's determination that some arguments supported the creditor's position. 606 B.R. at 771; *see Pearson*, 555 U.S. at 244 (three federal courts of appeals and two state Supreme Courts); *Orlandi*, 612 B.R. at 380 (five bankruptcy courts). Without more, the oral ruling that File procured from the state court does not shield him from contempt sanctions.

File next suggests that the *Rooker-Feldman* doctrine, which bars federal courts from exercising "jurisdiction over cases that essentially amount to appeals of state court judgments," *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam), should have applied to the state court's determination that the debt arose post-petition, at least for the period of time before the state court reversed course. Appellant's Br. 21. But *Rooker-Feldman* is a narrow rule that applies only when a party "complain[s] of injuries caused by state-court judgments rendered before [federal] district court proceedings commenced." *T.M. v. Univ. of Md. Med. Sys. Corp.*, No. 25-197, 2026 WL 1751823, at *6 (U.S. June 18, 2026) (quoting *Exxon Mobil*

11

*Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  The doctrine does not apply when the state court has not entered a judgment at all.  *See Vossbrinck*, 773 F.3d at 426; *Exxon*, 544 U.S. at 284, 292 (defining doctrine as governing federal district court's authority to review "a state court's judgment"); *T.M.*, 2026 WL 1751823, at *7–8 (applying *Rooker-Feldman* when challenged state-court judgment is on appeal but maintaining that doctrine rests on whether federal courts may exercise "jurisdiction to review state-court judgments").  Here, File objects not to a state court judgment but to a non-final oral ruling denying a motion to dismiss.  *State v. Wolowitz*, 468 N.Y.S.2d 131, 137 (App. Div. 1983).  Even assuming the debtors challenged the New York Supreme Court's interim order by moving for sanctions in the bankruptcy court, *Rooker-Feldman* would not bar them from proceeding.  *See, e.g.*, *Preacely v. AAA Typing & Resume, Inc.*, No. 12-CV-1361 (AT) (RLE), 2015 WL 1266852, at *12 (S.D.N.Y. Mar. 18, 2015); *Senatore v. Ocwen Loan Servicing, LLC*, No. 16-CV-8125 (VB), 2017 WL 3836056, at *3 (Aug. 31, 2017).

The bankruptcy court did not abuse its discretion by concluding there was no fair ground for doubt that the fraudulent conveyance suit was barred by the discharge injunction.

## II.    Compensatory Damages

File challenges the amount of compensatory sanctions imposed by the bankruptcy court on two grounds.  Neither argument succeeds.

*First*, File argues that the amount of attorney's fees awarded by the bankruptcy court was unreasonable.  *See* Appellant's Br. 23–25.  Keeping in mind the principles that courts imposing compensatory sanctions should seek "to do rough justice, not to achieve auditing perfection" and that the assessing court's "superior understanding of the litigation" entitles its judgment as to attorney's fees to "substantial deference on appeal," *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 110 (2017) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011) and *Hensley v. Eckerhart*,

461 U.S. 424, 437 (1983)), the bankruptcy court did not abuse its discretion by determining that an award of $58,902.35 fairly compensated debtors for legal fees that would not have been incurred but for File's violation of the discharge injunction. The record shows the bankruptcy court carefully assessed the debtors' claimed fees, rejecting certain time entries that it deemed were not attributable to File's violation of the injunction. *See, e.g.*, Order Granting Balance of Debtors' Mot. Seeking Sanctions 4–5. The Court has considered File's objections to individual time entries and finds them without merit.

*Second*, File challenges the bankruptcy court's award of $5,000 in emotional distress damages on the grounds that "there was absolutely no medical or other documentary evidence provided by Debtors justifying such award." Appellant's Br. 27. The debtors submitted a sworn affidavit to the bankruptcy court describing, in detail, the emotional stress File's continued prosecution of the fraudulent conveyance action in violation of the discharge order caused them. *See* Debtors' Aff. in Supp. of Mot. for Damages for Emotional Distress. This affidavit constituted appropriate evidence from which the bankruptcy court could find that the debtors had suffered emotional distress, and the bankruptcy court did not clearly err by so finding. Contrary to File's argument, evidence of medical intervention or psychiatric treatment is not always required to sustain an award of emotional distress damages. Courts in this Circuit regularly uphold "garden variety" emotional distress awards, like the one here, based on the injured party's testimony alone, without corroborating medical evidence. *See Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 319–20 (S.D.N.Y. 2018) (collecting cases).

### III.   Punitive Damages

File challenges the bankruptcy court's $6,000 punitive damages award on grounds that there was insufficient record evidence to sustain an award for non-compensatory sanctions.  *See* Appellant's Br. 25–26.  The bankruptcy court did not abuse its discretion.

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."  *In re Markus*, 78 F.4th 552, 567 (2d Cir. 2023) (citation omitted).  The Second Circuit has recognized that pursuant to these "inherent sanctioning powers," bankruptcy courts may "impose relatively minor non-compensatory sanctions on attorneys appearing before the court in appropriate circumstances."  *Id.* at 564 (quoting *Rosellini v. U.S. Bankr. Ct. (In re Sanchez)*, 941 F.3d 625, 628 (2d Cir. 2019)); *see Anderson v. Credit One Bank, N.A. (In re Anderson)*, 641 B.R. 1, 45 (Bankr. S.D.N.Y. 2022) (recognizing this authority under 11 U.S.C. § 105(a)).  The Second Circuit has not defined "the outermost bounds of" a bankruptcy court's powers, including whether it may "impose more substantial punitive sanctions."  *Ibid.* (quoting *Sanchez*, 941 F.3d at 626, 628) (alterations in original); *see also Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014).  The Court need not decide this dispute today because File challenges only the bankruptcy court's finding that he committed "'nefarious' or 'malevolent conduct'" worthy of non-compensatory damages.  Appellant's Br. 25–26.

In deciding whether to issue "non-compensatory sanctions for violation of" a discharge order, bankruptcy courts typically ask whether the creditor's conduct was "particularly egregious," evidencing a "clear disregard" for the bankruptcy laws.  *Anderson*, 641 B.R. at 48–49 (citations omitted).  A creditor typically commits particularly egregious misconduct by repeatedly pursuing a debt in bald disregard of a discharge order.  *See, e.g.*, *In re Beschloss*, No. 15-12139 (MEW), 2018 WL 2138276, at *6 (Bankr. S.D.N.Y. May 8, 2018) (awarding punitive damages to law firm

14

that pursued debt "after repeated notice of a bankruptcy discharge, without actively assuring itself that pursuit of the debt is permitted); *In re Haemmerle*, 529 B.R. 17, 30 (Bankr. E.D.N.Y. 2015) (same for bank that pursued debt by calling debtor 137 times despite "knowing" about discharge injunction); *Nicholas v. Oren* (*In re Nicholas*), 457 B.R. 202, 227 (Bankr. E.D.N.Y. 2011) (same for *pro se* creditor "fully aware" of discharge injunction). When a creditor pursues a discharged claim "even after [receiving] clear notice," "fail[s] to comply [with a discharge order] when given the opportunity to do so," or "disregard[s] . . . opportunities to correct a violation," courts have found non-compensatory damages appropriate. *Anderson*, 641 B.R. at 48–49 (citations omitted).

The bankruptcy court did not abuse its discretion in issuing a $6,000 sanctions award against File for repeatedly failing to comply with its discharge order. It found File's behavior "particularly egregious" because he received "multiple opportunities to comply with the injunction" but refused each time. Oral Decision Tr. 33:9–15. The bankruptcy court enumerated eleven times the debtors attempted to notify File of the discharge order, either in person before the state court or in emails to his office explaining how "the debtors could not be pursued further." *Id.* at 33:22–25. Rather than research the controlling law, File rebuffed each attempt. He instead pressed an unsupported theory as to why the discharge order did not apply. *Id.* at 28:12–22. The bankruptcy court acted within its discretion in finding that this choice, which amounted to "repeatedly bur[ying] [his] head[] in the sand" in defiance of the discharge, was so egregious as to reflect a disregard for the bankruptcy system. Oral Decision Tr. 35:21–36:1; *see, e.g.*, *In re Szenes*, 515 B.R. 1, 8 (Bankr. E.D.N.Y. 2014) (imposing punitive damages where bank continued to send collection letters even after receiving notification of discharge).

File's affidavit below does not undermine the bankruptcy court's decision. It states that he was not an experienced bankruptcy attorney and that he had sincerely believed, however

15

erroneously, that the fraudulent-conveyance suit did not violate the discharge injunction, pointing to evidence including the state court's initial order denying the *pro se* debtors' motion to dismiss and his immediate compliance with the bankruptcy court's order to discontinue the state court action.  *See* File Affirm.  But the bankruptcy court did not clearly err in concluding that notwithstanding File's alleged sincerity, his choice to insist upon a baseless legal position despite 11 letters cautioning him otherwise was so egregious as to reflect a disregard for bankruptcy law.  Oral Decision Tr. 35:21–36:1.  Indeed, debtors' counsel expressly clarified in an email response to File's ripeness theory that any "actions for monetary damages were at first stayed by virtue of [11 U.S.C. § 362] and then ultimately discharged."  Dec. 17, 2021 Email (Bankr. Dkt. #30-6); *see* Warning Letter (Bankr. Dkt. #30-8) (explaining as a courtesy that the "discharge injunction covers any potential action for damages").  The bankruptcy court's $6,000 sanctions award is affirmed.

## IV.    Evidentiary Hearing

File argues that the district court abused its discretion by issuing sanctions without holding an evidentiary hearing.  "It is well settled that a person facing possible sanctions is entitled to due process, *i.e.* notice and an opportunity to be heard."  *In re Gordon*, 577 B.R. at 49 (citing *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 142 (2d Cir. 2000)).  "The opportunity to respond is judged under a reasonableness standard: a full evidentiary hearing is not required."  *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000).  In some circumstances, "the opportunity to respond by brief or oral argument may suffice."  *Ibid.*  Relevant here, a bankruptcy court may decide a sanctions motion on the basis of the parties' briefing where "the key allegations of contempt [are] not in dispute."  *A Royal Flush, Inc. v. Arias*, 855 F. App'x 23, 26 (2d Cir. 2021); *see Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999) ("An evidentiary

16

hearing serves as a forum for finding facts; as such, its need can be obviated when there is no disputed question of fact or when sanctions are based entirely on an established record.").

The bankruptcy court did not abuse its discretion in declining to order an evidentiary hearing. First, File received constitutionally sufficient process. The bankruptcy court held multiple hearings, including oral argument, on the issue of sanctions, and both sides were afforded the opportunity to submit briefing and documentary evidence. Second, the key allegations are not in dispute. File suggests that had the bankruptcy court held an evidentiary hearing, it would have received the benefit of testimony regarding "File's limited Bankruptcy Court experience" and "the absence of any nefarious or vindictive motives for his actions." Appellant Br. 17. But even if the bankruptcy court credited File's representations of inexperience and sincerity, it would have arrived at the same conclusion because the parties agree on the substance of his underlying conduct. The bankruptcy court concluded from the parties' filings and the state-court record that File disregarded "multiple opportunities to comply with the injunction and to cease the action in state court." Oral Decision Tr. 33:10–15. He did so despite receiving letters from opposing counsel apprising him of the nature of the discharge as a courtesy and warning him of possible sanctions if he did not withdraw his claims. Dec. 17, 2021 Email; Warning Letter. In finding File's obstreperous pursuit of the claims so egregious as to warrant civil contempt sanctions notwithstanding his state of mind, the bankruptcy court acted within its discretion. *See* Oral Decision Tr. 33:9–15.

## V.    Personal Liability

File objects to the district court's imposition of sanctions against him personally, arguing that sanctions should be imposed only against his law firm, Howard M. File, Esq. P.C. *See* Appellant's Br. 28; Reply Br. 16 (Dkt. #14).

17

File has forfeited this issue by failing to raise it below. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Allianz Ins. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005) (citation omitted) (alteration in original); *see also In re Mosdos Chofetz Chaim Inc.*, No. 22-33, 2023 WL 105715, at *2 (2d Cir. Jan. 5, 2023) ("[A] party to a bankruptcy action waives an argument by failing to raise it in the bankruptcy court, even if they subsequently raise the argument in the district court on appeal."). Absent "manifest injustice," "new arguments will not be considered on appeal." *In re Gordon*, 577 B.R. at 47 (citing *In re Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994)). "[T]he circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (per curiam) (quotation marks, ellipses, brackets, and citation omitted).

File never argued to the bankruptcy court that sanctions could not be imposed against him personally, even though the entire motion was litigated on that premise. *See, e.g.*, Mot. to Reopen 1 (seeking to impose sanctions "against Howard File Esq. and Barry Crupi jointly and severally"). On appeal, he argues that he could not have raised this issue below because he "had no opportunity to speak in his own defense throughout the sanction hearings" and that, because all hearings were conducted remotely, he "had no opportunity to simultaneously speak with [his attorney] or provide him with notes." Reply Br. 16.

This argument is meritless. The telephonic format of the bankruptcy court's hearings does not excuse File's failure to raise this issue in any of his written briefs below, both those authored by his attorney and those by File *pro se*. What's more, File's attorney fully participated in each of the bankruptcy court's hearings. File, an attorney himself, is well-aware of the bedrock principle

18

that a party is bound by the actions and omissions of the attorney he retains on his behalf. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962); *see also Nemaizer v. Baker*, 793 F.2d 58, 62–63 (2d Cir. 1986) ("[A]n attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary."). File cannot now resuscitate this forfeited issue by pinning the blame for not raising it on his former attorney. Accordingly, the Court will not take up the issue of personal liability for the first time on appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the United States Bankruptcy Court for the Eastern District of New York is affirmed. Any request for attorney's fees arising from this appeal is properly directed to the bankruptcy court in the first instance. *See In re DiBattista*, 33 F.4th at 703, 705.

SO ORDERED.

  /s/  *Rachel Kovner*          
RACHEL P. KOVNER
United States District Judge

Dated: June 29, 2026
       Brooklyn, New York

19